Daniel C. Green (ISB No. 3213)
Heidi Buck Morrison (ISB No. 9396)
RACINE OLSON, PLLP
P.O. Box 1391
Pocatello, Idaho 83204
Phone: (208) 232-6101
Fax: (208) 232-6109

*Attorneys for Gary L. Rainsdon*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 17-40973-JMM |
| WELLS ALAN WYATT, | (Chapter 7) |
| Debtor. | |

**TRUSTEE'S MOTION TO SELL REAL PROPERTY (2085 EAST 600 SOUTH HAZELTON, IDAHO AND 2095 EAST 600 SOUTH, HAZELTON, IDAHO) FREE AND CLEAR OF LIENS AND OTHER INTERESTS**

COMES NOW, the Chapter 7 Trustee, Gary L. Rainsdon (Trustee") and Kathleen McCallister, the Chapter 13 Trustee of Candice Cooley, a co-owner of the Real Property described herein, and hereby moves the Court, pursuant to 11 U.S.C. § 363(b) and (f), Rule 6004 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 2002.1, for an order approving the sale free and clear of liens and encumbrances of property located at 2095 East 600 South, Hazelton, Idaho 83335 and 2085 East 600 South., Hazelton, Idaho 83335. The information required by Local Bankruptcy Rule 2002.1 is as follows:

1. **Description of Real Property**. The Real Property consists of two parcels of property located at 2095 East 600 South., Hazelton, Idaho 83335 ("Parcel 1") and 2085 East 600 South., Hazelton, Idaho 83335 ("Parcel 2") (collectively "Real Property"), each Parcel consists of

40 acres for a total of 80 acres. The Real Property also includes a squeeze shoot and livestock scale

to the extent they are affixed to the Real Property.  The Real Property is legally described as:

**PARCEL NO. 1:**
**TOWNSHIP 9 SOUTH, RANGE 20 EAST OF THE BOISE MERIDIAN,**
**JEROME COUNTY IDAHO**

**Section 21:    E½E ½NE¼**

**EASEMENT NO. 1:**
**An Easement and right of way for a road as a means of ingress and egress and for water,**
**sewer and gas pipelines, telephone and power lines and poles and conduits for any other**
**public utilities over the North 65 feet of Section 21, Township 9 South, Range 20 East, Boise**
**Meridian, Jerome County, Idaho as set forth in the Easement recorded June 15, 1995 as**
**Instrument Number 952363, Jerome County records.**

**PARCEL NO. 2:**
**TOWNSHIP 9 SOUTH, RANGE 20 EAST OF THE BOISE MERIDIAN,**
**JEROME COUNTY, IDAHO**

**Section 21:    W½NE ¼NE¼ and W ½SE¼NE¼**

**EASEMENT NO. 2 :**
**TOGETHER WITH an easement and right of way for a road as a means of ingress and**
**egress and for water, sewer and gas pipelines, telephone and power lines and poles and**
**conduits for any other public utilities over the North 65 feet of Section 21, Township 9 South,**
**Range 20 East, Boise Meridian, Jerome County, State of Idaho as setforth in the easement**
**recorded June 15, 1995 as Instrument Number 952363.**

2.      **Date, Time, and Place of Sale**.  The sale is a private sale, not in the ordinary course

of business.  The Court will conduct a hearing on the Trustee's Motion on the 11ᵗʰ **day of**

**December, 2018, at the hour of 9:30 a.m. (MST) at the James A. McClure Federal Building**

**and United States Courthouse, 550 W. Fort St., Boise, Idaho**, to determine and rule on the

Trustee's Motion and Notice to Sell Real Property and on any timely objections thereto.

3.      **Vesting of Real Property**.

(a)    Title to Parcel 1 is vested in Candice Cooley, an unmarried woman[1] , and Wells A. Wyatt, an unmarried man.

(b)    Title to Parcel 2 is vested in Wyatt Feeding, LLP, an Idaho limited liability company.  Wells A. Wyatt is the sole member of Wyatt Feeding, LLP.

4.    **Material Terms of Sale**.  The material terms of the sale are as follows:

a.    **Purchase Offer**.  The Trustee has received and accepted from Gary Carney and Barbara Carney (collectively "Buyer"), subject to higher offers and Court approval, an offer of $600,000.00 cash for the Purchase of the Real Property.  A signed copy of the Real Estate Purchase and Sale Agreement (and counteroffers) is attached hereto as **Exhibit "A."**  To the best of the Trustee's knowledge, information, and belief, the Buyer has no connection to the Debtor.

b.    **Earnest Money**.  The Buyer has delivered to the Trustee's Realtor earnest money of $250,000.00.  If the Buyer is the successful purchaser and closes the sale, the $250,000.00 earnest money shall be applied and credited toward the purchase price.  The earnest money shall be non-refundable in the event Buyer fails to pay the remaining purchase price or withdraws its offer prior to bankruptcy court approval of the sale.  The earnest money shall be fully refundable to the Buyer if the bankruptcy court fails to approve the sale or an objection to the proposed sale is filed and the Buyer is not the successful purchaser.

c.    **Sale "AS IS" and Without Warranty**.  The Trustee proposes to sell said Real Property in accordance with the terms and provisions contained herein to Buyer "AS IS," free and clear of any and all liens, mortgages, encumbrances, or interest of any nature whatsoever and WITHOUT WARRANTY OF ANY NATURE EITHER EXPRESS OR IMPLIED.

---

[1] Candice Cooley filed a chapter 13 proceeding on June 15, 2018 as case no. 18-40515-JMM.  Kathleen A. McAllister is the chapter 13 Trustee.

d.    **Auction Conducted by the Court**. In the alternative, if the court does not approve the private sale, the Trustee proposes that the court implement the terms and provisions of 11 U.S.C. § 363, and Rule 6004 of the Federal Rules of Bankruptcy Procedure which authorizes the court to either: (a) sell at public auction to third parties on the same terms and provisions as provided herein for cash or cashier's check in a greater amount to be received from said third parties; or (b) establish its own terms and conditions and hold a public auction of said Real Property.

The Court shall, in its sole discretion, on said date:

(i)    Determine whether or not to approve the hereinabove described private sale, on the terms and provisions herein contained;

(ii)    Determine whether or not to approve the hereinabove described private sale on terms and provisions imposed by the Court; or

(iii)    Determine whether or not to conduct a public auction of said Real Property. Any person or entity desiring to participate in a public auction of the Real Property conducted by the Judge in open court must be a "Qualified Bidder." To be deemed a "Qualified Bidder" a party must do the following:

(1)    Timely file an objection to this Motion to Sell Real Property as described in Paragraph 9 below.

(2)    Tender to the Trustee, by no later than 5:00 p.m. on December 10, 2018, a deposit in the amount of $250,000.00 in certified funds, payable to "Gary L. Rainsdon, Trustee." The deposit shall be held in escrow in a segregated account of Trustee pending the closing of the sale. The full amount shall be forfeited as liquidate damages if a party is ultimately the successful bidder and fails to close the transaction because of a breach or failure to perform on the part of the successful purchaser. Should the Qualified Bidder be the winning bidder, the deposit will be retained by Trustee as a nonrefundable deposit for application against the purchase price at the closing or returned to the Qualified Bidder if the Bankruptcy Court does not approve the sale due to no fault of the successful bidder. The certified funds of unsuccessful bidders will be refunded to those parties after the close of the sale.

(3)    Provide proof of funds satisfactory to Trustee evidencing that the bidder has the financial wherewithal to timely consummate the purchase of the Real Property.

If an objection to the proposed sale is filed and the bankruptcy court conducts an auction on the sale of the real property, bid amounts shall be in increments of not less than Ten Thousand Dollars ($10,000.00). Nothing herein shall preclude Buyer from bidding at any court ordered auction.

All bidders shall be deemed to have consented to the core jurisdiction of the bankruptcy court, and to have waived any right to a jury trial in connection with any disputes relating to the auction and sale of the Real Property.

(iv)    Determine whether or not to establish and impose its own terms and provisions and conduct in open court, a public auction of the estate's interest in said Real Property.

**SUCH MODIFIED TERMS AND PROVISIONS, IF ANNOUNCED BY THE COURT, SHALL BE BINDING ON ALL PARTIES IN INTEREST.**

5.    **Closing**. Closing shall take place no later than January 21, 2019, or such other time as the court shall impose.

6.    **Trustee's Deed and Bill of Sale**. At the time of closing, the successful purchaser shall receive a Trustee's Deed in standard form, including the applicable provisions contained herein, transferring to the purchaser all of the estate's right, title, and interest in and to the Real Property.

7.    **Sale Free and Clear**. The Real Property is to be sold free and clear of all liens and encumbrances with all valid liens (if any) to attach to the sale proceeds pursuant to §363(f)(2), (3), and (4). The liens and encumbrances of which Trustee is aware are identified below. For any other, liens, interests, or encumbrances, Trustee contends that, if this Motion is approved without any objection from any party asserting an additional lien, interest, or encumbrance, the Real Property is deemed sold free and clear of any such interests, liens, or encumbrances. For the purposes of § 363(f)(2), the absence of an objection by holders of claims and interest in property constitutes consent to a sale free and clear of such claims and interests. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("lack of objection [provided of course there is

notice] counts as consent"); *In re Borders Grp., Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011);

*In re Blixseth*, 2011 WL 1519914 *14 (Bankr. D. Mont. Apr. 20, 2011).

      8.    **Fair Market Value**.  Trustee has marketed the Real Property through Coldwell

Banker Canyonside Realty.  Except for the offer from Buyer, no other offers have been received.

The assessed value of the Real Property is $619,000.00.  In his schedules the Debtor valued the

Real Property at $560,000.00.  Trustee believes the purchase price of $600,000.00 is approximate

to the fair market value of the Real Property, based upon his discussion with his realtor and current

market conditions.

      9.    **Claimed Liens or Encumbrances**.  Trustee has obtained a Preliminary Title

Report for the Real Property.  That report identifies the following existing and/or potential liens,

interests, and/or encumbrances:

| Parcel No. | Lienholder or Potential Lienholder | Basis for Lien or Purported Lien | Amount |
|---|---|---|---|
| 1 | Jerome County | Property Taxes | $4,246.88 |
| 2 | Jerome County | Property Taxes | $7,773.88 |
| 1 | First Federal Savings Bank of Twin Falls | Deed of Trust dated August 19, 2010 and recorded on August 20, 2010 as Jerome County Recorders Instrument No. 2103641 | $166,900.79 (Motion for Stay Relief Dkt. 57) |
| 1 & 2 | Timmerman & Sons Feeding, Inc., a Nebraska corporation | Mortgage and Assignment of Leases and Rents dated September 11, 2013 and recorded on September 11, 2013 as Instrument No. 2134215 | $119,674.73 (Claim No. 5) |
| 1 & 2 | Banner Bank | Mortgage dated August 21, 2015 and recorded on August 17, 2015 as Jerome County recorders instrument No. 2153329 | $2,825,466.74 (Claim No. 6) |
| 1 & 2 | Kilgore Companies | Material or labor lien | $15,592.57 |
| 1 & 2 | State of Idaho, ex rel, Industrial Commission | Judgment recorded on October 12, 2017 as Instrument No. 2173874 and 2173939 | $4,975.00 |
| | | **TOTAL LIENS/INTERESTS** | $3,144,630.59 |

10.     **Proposed Disposition of the Proceeds**. Trustee proposes that the purchase price be distributed as follows:

(a)     On or about August 29, 2018, Gary L. Rainsdon, as Chapter 7 Trustee for Wells A. Wyatt; Kathleen A. McAllister, as Chapter 13 Trustee for Candice E. Cooley; Candice E. Cooley; and Banner Bank entered into an "Agreement to Sell Real Property and Distribute Sales Proceeds ("Agreement"). A copy of the Agreement is attached hereto as **"Exhibit B."** Under the Agreement the sales proceeds are to be distributed as follows:

| | |
|---|---|
| **Sale Price** | **$600,000.00** |
| Less *Estimated Deductions* | |
| Estimated Unpaid Property Taxes | $ 12,020.76 |
| *Estimated Closing Costs* | $  4,000.00 |
| Chapter 7 Trustee – net sum of | $ 37,500.00 |
| Chapter 13 Trustee – net sum of | $ 25,000.00 |
| Attorneys' Fees and Costs Incurred by the Chapter 7 Trustee in Obtaining Approval for the Sale of the Real Property | $  3,500.00* |
| First Federal Savings Bank of Twin Falls | $166,900.79** |
| Timmerman & Sons Feeding, Inc. | $119,674.73 |
| Total Estimated Deductions at Closing | $368,596.28 |
| **Remaining Proceeds** | **$231,403.72** |

*Subject to application and approval of such compensation.

**Total payoff as of October 30, 2018. The amount paid to First Federal Savings Bank of Twin Falls will also include accrued and accruing interest, fees and costs.

From the Remaining Proceeds, the Trustee intends to pay: (i) Six percent (6%) Realtor Commission of $36,000.00 subsequent to an application and approval of such compensation to the Realtor; (ii) Any Capital Gains Tax; and (iii) All proceeds existing after the payments described above will be paid to Banner Bank. Actual deductions for unpaid property taxes, realtor's commission, closing costs, etc., may vary depending on the actual closing date and/or sale amount. Any liens currently

attached to the Real Property will attach to the proceeds of the sale pursuant to § 363(f)(2), (3), and (4).  Neither Wells A. Wyatt nor Candice Cooley will receive any distributions from the sales Proceeds.

11.  **Objections to Sale**.  The court will conduct a hearing on the 11th **day of December, 2018, at the hour of 9:30 a.m. (MST) at the James A. McClure Federal Building and United States Courthouse, 550 W. Fort St., Boise, Idaho,** to determine and rule on the Trustee's Motion to Sell Property as set forth herein, together with any timely objections thereto.  Any objections to the sale must be filed in writing with the United States Bankruptcy Court at the above address and served upon Gary L. Rainsdon, Trustee (884 Rim View Lane East, Twin Falls, Idaho 83301); and counsel for the Trustee, Daniel C. Green, at the address set forth above on or before **December 10, 2018**.  You may also attend the scheduled hearing and present your views or support your filed response.  The court will resolve any objections at said hearing, if not resolved by the parties prior to the hearing.   The court may also conduct an auction of the Real Property as described in Paragraph 3(d) above.

12.  **Information**.  Every effort has been made to ensure that the information contained herein is accurate; however, the Trustee is not responsible for errors or omissions.  The successful purchaser is deemed to have full knowledge as to the estate's interest in the Real Property, including but not limited to the size, location, nature, condition, character, restrictions, title and/or other relevant information.

13.  Trustee believes and asserts that the Buyer is a good faith Purchaser and requests a finding of the same.

14.  Trustee believes the proposed sale is in the best interest of the estate and creditors.

15.  Trustee requests that approval of this sale be effective immediately and the 14 day stay imposed by Rule 6004(h) and other rules be waived.

16.     THE PROPERTY SHALL BE SOLD AS IS, WHERE IS, AND WITHOUT
WARRANTY OF ANY NATURE WHATSOEVER, EITHER EXPRESS OR IMPLIED.

DATED this 27th day of November, 2018.

RACINE OLSON, PLLP


By:   /s/ Daniel C. Green
DANIEL C. GREEN


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of November, 2018, I filed the foregoing
electronically through the CM/ECF system which caused the following parties or counsel to be
served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Gary L. Rainsdon
trustee@filertel.com
id12@ecfcbis.com
jhancock@filertel.com
lori@filertel.com
cblackburn@filertel.com

U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov

Ron Kerl
Ron@cooper-larsen.com
kelli@cooper-larsen.com
bobbi@cooper-larsen.com

Derrick J. O'Neill
doneill@idalaw.com
mingham@idalaw.com

David A. Coleman
david@crctflaw.com

Patrick John Geile
pgeile@foleyfreeman.com
rboyle@foleyfreeman.com
r59345@notify.bestcase.com

Randall A. Peterman
rap@givenspursley.com
kad@givenspursley.com
Wandawhite@givenspursley.com

Alex P. McLaughlin
apm@givenspursley.com
litigation@givenspursley.com
jrt@givenspursley.com
kad@givenspursley.com
tmh@givenspursley.com

Ramina Dehkhoda-Steele
rdehkhoda@wongfleming.com
rarustamova@wongfleming.com

Janine Patrice Reynard
jpr@magicvalleylaw.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the non-CM/ECF Registered Participants and the attached mailing matrix by first class mail, postage prepaid, addressed as follows:

Wells Alan Wyatt
2095 E. 500 South
Hazelton, ID 83335

American Express Bank, FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Stearns Bank NA
Pam Loehr, Collection Specialist
500 13th St
POB 750
Albany, MN 56307

PACCAR Financial Corp.
P.O. Box 1518
Bellevue, WA 98009-1518

Gary Shook
Coldwell Banker Canyonside Realty
800 Falls Ave
Twin Falls, ID 83301

/s/ Daniel C. Green
DANIEL C. GREEN

Label Matrix for local noticing
0976-8
Case 17-40973-JMM
District of Idaho
Twin Falls
Tue Nov 27 13:57:05 MST 2018

AMEX
CORRESPONDENCE
PO BOX 981540
EL PASO, TX 79998-1540

AO Wyatt
20018 New Idaho Rd.
Lakeview, OR 97630-7009

American Express
PO Box 0001
Los Angeles, CA 90096-8000

American Express Bank, FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

BMO Financial
PO Box 6040
Cedar Rapids, IA 52406

BMO Harris Bank N.A.
c/o Wong Fleming
10675 Willows Road NE, Suite 250
Redmond, WA 98052-2598

BMO Harris Bank, N.A.
Wong Fleming
10675 Willows Road NE
Suite 250
Redmond, WA 98052-2598

Banner Bank
Givens Pursley LLP
c/o Randall A. Peterman
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

Banner Bank
10 S. First Street
Walla Walla, WA 99362-1942

Banner Bank
PO Box 1117
Walla Walla, WA 99362-0293

Banner Bank
c/o Randall A. Peterman
Givens Pursley LLP
601 W. Bannock St.
Boise, ID 83702-5919

Blacks Oil Company
PO Box 346
Eden, ID 83325-0346

Heidi Buck Morrison
Racine Olson Nye Budge & Bailey Chtd.
201 East Center Street
Pocatello, ID 83201-6329

CAPITAL ONE
ATTN: BANKRUPTCY
PO BOX 30253
SALT LAKE CITY, UT 84130-0253

CBNA - Sears
PO Box 6275
Sioux Falls, SD 57117-6275

Cache Cow Farms
PO Box 793
Rupert, ID 83350-0793

Candice Cooley
PO Box 116
Hazelton, ID 83335-0116

Caterpillar Financial
2120 West End Ave.
PO Box 34001
Nashville, TN 37203-5341

David A Coleman
PO Box 525
Twin Falls, ID 83303-0525

Dar Pro
18305 S. Cole Rd.
Kuna, ID 83634-4707

Deere Credit Inc
c/o Ron Kerl
POB 4229
Pocatello, ID 83205-4229

Ramina Dehkhoda-Steele
Wong Fleming
10675 Willows Road NE
Suite D150
Redmond, WA 98052-2530

ENGS Commercial Financing
2441 Warrenville Rd
Lisle, IL 60532-3642

Expedia  Voyager Citi Card
PO Box 6500
Sioux Falls, SD 57117-6500

FIRST FEDERAL SAVINGS
383 SHOSHONE ST N
TWIN FALLS, ID 83301-6152

First Federal Savings Bank
Jonathan Schreurs
PO Box 249
Twin Falls, Idaho 83303-0249

First Federal Savings Bank of Twin Falls
c/o David A. Coleman
PO Box 525
Twin Falls, Id 83303-0525

Patrick John Geile
FOLEY FREEMAN, PLLC
PO Box 10
Meridian, ID 83680-0010

Daniel C Green
POB 1391
Pocatello, ID 83204-1391

Howard J. Kaslow
Abrahams Kaslow & Cassman
8712 W. Dodge Rd., Ste. 300
Omaha, NE 68114-3450

IDAHO CENTRAL CR UN
PO BOX 2469
POCATELLO, ID 83206-2469

IRS
PO Box 7346
Philadelphia, PA 19101-7346

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Idaho State Brand
PO Box 1177
Meridian, ID 83680-1177

Idaho State Tax Comm
PO Box 83784
Boise, ID 83707-3784

Jerome County
300 N Lincoln Ave # 205
Jerome, ID 83338-2344

John Deere Financial
6400 NW 86th St
PO Box 6600
Johnston, IA 50131-6600

R Ron Kerl
POB 4229
Pocatello, ID 83205-4229

Alex P McLaughlin
GIVENS PURSLEY LLP
601 W. Bannock
Boise, ID 83702-5919

Derrick J O'Neill
Jones Gledhill Fuhrman Gourley, PA
225 N. 9th St. Ste 820
Boise, ID 83702-5778

(p)PACCAR FINANCIAL CORP
P O BOX 1518
BELLEVUE WA 98009-1518

Paccar Financial
777 106th Ave NE
Bellevue, WA 98004-5027

Patrone Livestock, LLC
2095 E 500 S
Hazelton, ID 83335

Randall A Peterman
Givens Pursley LLP
601 W. Bannock St.
P.O. Box 2720,
Boise, ID 83701-2720

Gary L Rainsdon
POB 506
Twin Falls, ID 83303-0506

Randall A. Peterman
Givens Pursley LLP
PO Box 2720
Boise, ID 83701-2720

Janine Patrice Reynard
Worst, Fitzgerald & Stover, PLLC
3858 North Garden Center Way
Suite 200
Boise, ID 83703-5008

Gary Shook
Coldwell Banker Canyonside Realty
800 Falls Ave
Twin Falls, ID 83301-3366

Simplot Western Stockmans
PO Box 413058
Salt Lake City, UT 84141-3058

Stearns Bank
500 13th Street
PO Box 750
Albany, MN 56307-0750

Stearns Bank NA
Pam Loehr, Collection Specialist
500 13th St
POB 750
Albany, MN 56307-0750

Stevens Pierce Associates,
320 Main Ave North
Twin Falls, ID 83301-5956

Summit Leasing
3901 Fairbanks Ave
Yakima, WA 98902-6394

Summit Leasing, Inc.
15 West South Temple, 3rd Floor
Salt Lake City, UT 84101-1542

Timmerman & Sons Feeding Co.
PO Box 367
Springfield, NE 68059-0367

Timmerman & Sons Feeding Co., Inc.
c/o Worst, Fitzgerald & Stover, PLLC
3858 N. Garden Center Way
Ste 200
Boise, ID 83701 US 83703-5008

Timmerman & Sons Feeding Co., Inc.
165 South 2nd Street
Springfield, NE 68509

US Trustee
Washington Group Central Plaza
720 Park Blvd, Ste 220
Boise, ID 83712-7785

Western Waste Management
PO Box 714
Jerome, ID 83338-0714

A.O. Wyatt
Jones Gledhill
225 N 9th Street
Suite 820
Boise, ID 83702-5778

Wyatt Livestock, Inc.
2095 E 600 S
Hazelton, ID 83335-5095

Wells Alan Wyatt
2095 E. 500 South
Hazelton, ID 83335

Wyatt Feeding, LLP
2095 E 600 S
Hazelton, ID 83335-5095

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

IRS
PO Box 7704
San Francisco, CA 94120-7704

PACCAR Financial Corp.
P.O. Box 1518
Bellevue, WA 98009-1518

(d)PACCAR Financial Corp.
Attn: Linda Markle, BK Specialist
P.O. Box 1518
Bellevue, WA 98009-1518

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)American Express Bank, FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)Gary L Rainsdon
POB 506
Twin Falls, ID 83303-0506

(d)Stearns Bank NA
PAM Loehr, Collection Specialist
500 13th St
POB 750
Albany MN 56307-0750

End of Label Matrix
Mailable recipients    63
Bypassed recipients     3
Total                  66

# EXHIBIT "A"



# RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT



**JULY 2018 EDITION**

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

Page 1 of 8

**NO WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF HABITABILITY, AGREEMENTS OR REPRESENTATIONS NOT EXPRESSLY SET FORTH HEREIN SHALL BE BINDING UPON EITHER PARTY.**

ID#    KC11172018                                                  DATE    11/17/2018

**LISTING AGENCY**   Coldwell Banker Canyonside Realty    Office Phone #   208-734-6500   Fax # _____

Listing Agent   Shari Goedhart   E-Mail   shari@clragent.com   Phone #   208-539-5845

**SELLING AGENCY**   Keller Williams Sun Valley Southern Idaho   Office Phone #   208-734-1991   Fax #   208-734-1288

Selling Agent   Kallie Carney   E-Mail   kallie@magicvalleyhometeam.com   Phone #   208-734-1991

**1. BUYER:**   Gary Carney   &   Barbara Carney

(Hereinafter called "BUYER") agrees to purchase, and the undersigned SELLER agrees to sell the following described real estate hereinafter referred to as "PROPERTY" COMMONLY KNOWN AS   2095   P 600 S

City   Hazelton   County   Jerome   ID, Zip   83335   legally described as: _____

E 1/2 E 1/2 NE 1/4 Sec 29 T9 r 70 (40 Acres) W 1/2 Eine Sec 21 T9 R20 (40 Acres)

OR Legal Description Attached as exhibit _____ (Exhibit must accompany original offer and be signed or initialed by BUYER and SELLER.)

**2. $**   550,000.00   **PURCHASE PRICE:**   Five Hundred Fifty Thousand   **DOLLARS,**
payable upon the following TERMS AND CONDITIONS (not including closing costs):

**This offer is contingent upon the sale, refinance, and/or closing of any other property** ☐ Yes ☒ No

**3. FINANCIAL TERMS: Note: A+C+D+E must add up to total purchase price.**

(A). $   250,000.00   **EARNEST MONEY:**   Two Hundred Fifty Thousand   **DOLLARS**
BUYER hereby offers the above stated amount as Earnest Money which shall be credited to BUYER upon closing. Earnest Money is:

| Evidenced by: | Held By: | Delivered: | Deposited: |
|---|---|---|---|
| ☐ Cash | ☒ Responsible Broker | ☐ With Offer | ☐ Upon Receipt and Acceptance |
| ☐ Personal Check | ☐ Closing Company | ☐ Within _____ business days (three [3] if left blank) of acceptance. | ☒ Upon Receipt Regardless of Acceptance |
| ☒ Cashier's Check | ☐ Other _____ | ☒ Other   11/19/2018 | ☐ Other _____ |
| ☐ Wire Transfer | | | |
| ☐ Note | | | |
| ☐ Other _____ | | | |

THE RESPONSIBLE BROKER SHALL BE:   Nancy Glaesemann

(B). ALL CASH OFFER: ☐NO ☒YES If this is an all cash offer do not complete Sections 3C and 3D, fill blanks with "0" (ZERO). IF CASH OFFER, BUYER'S OBLIGATION TO CLOSE SHALL NOT BE SUBJECT TO ANY FINANCIAL CONTINGENCY. BUYER agrees to provide SELLER within _____ business days (three [5] if left blank) from the date of acceptance of this agreement by all parties written confirmation of sufficient funds and/or proceeds necessary to close transaction. Acceptable documentation includes, but is not limited to, a copy of a recent bank or financial statement.

Cash proceeds from another sale: ☐ Yes ☒ No

(C). $   0.00   **NEW LOAN PROCEEDS:** This Agreement is contingent upon BUYER obtaining the following financing:
FIRST LOAN of $ _____ not including mortgage insurance, through ☐FHA, ☐VA, ☐CONVENTIONAL, ☐IHFA, ☐RURAL DEVELOPMENT, ☐OTHER _____ with interest not to exceed _____% for a period of _____ year(s) at: ☐Fixed Rate ☐Other _____
In the event BUYER is unable, after exercising good faith efforts, to obtain the indicated financing, BUYER's Earnest Money shall be returned to BUYER.
SECOND LOAN of $ _____ through ☐FHA, ☐VA, ☐CONVENTIONAL, ☐IHFA, ☐RURAL DEVELOPMENT, ☐OTHER _____ with interest not to exceed _____% for a period of _____ year(s) at: ☐Fixed Rate ☐Other _____
LOAN APPLICATION: BUYER ☐has applied OR ☐shall apply for such loan(s). Within _____ business days (ten [10] if left blank) of final acceptance of all parties, BUYER agrees to furnish SELLER with a written confirmation showing lender approval of credit report, income verification, debt ratios, and evidence of sufficient funds and/or proceeds necessary to close transaction in a manner acceptable to the SELLER(S) and subject only to satisfactory appraisal and final lender underwriting. If an appraisal is required by lender, the PROPERTY must appraise at not less than PURCHASE PRICE or BUYER'S Earnest Money shall be returned at BUYER's request unless SELLER, at SELLER's sole discretion, agrees to reduce the purchase price to meet the appraised value. SELLER shall be entitled to a copy of the appraisal and shall have 24 hours from receipt thereof to notify BUYER of any price reduction. BUYER may also apply for a loan with different conditions and costs and close transaction provided all other terms and conditions of this Agreement are fulfilled, and the new loan does not increase the costs or requirements to the SELLER.   FHA / VA: If applicable, it is expressly agreed that notwithstanding any other provisions of this contract, BUYER shall not be obligated to complete the purchase of the PROPERTY described herein or to incur any penalty or forfeiture of Earnest Money deposits or otherwise unless BUYER has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration or a Direct Endorsement lender setting forth the appraised value of the PROPERTY of not less than the sales price as stated in the contract. If such written confirmation required in 3(B) or 3(C) is not received by SELLER(S) within the strict time allotted, SELLER(S) may at their option cancel this agreement by notifying BUYER(S) in writing of such cancellation within _____ business days (three [3] if left blank) after written confirmation was required. If SELLER does not cancel within the time period specified as set forth herein, SELLER shall be deemed to have accepted such written

BUYER'S Initials _____ x _____ Date 11-17-18          SELLER'S Initials ( _____ ) x ( _____ ) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

JULY 2018 EDITION     RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT     **Page 2 of 8**

PROPERTY ADDRESS: 2095   E 600 S       Hazelton    ID   83335   ID#:   KC1172018

53 confirmation of lender approval or waived the right to receive written confirmation and shall be deemed to have elected to proceed with the transaction.
54 SELLER'S approval shall not be unreasonably withheld.
55
56     **(D). $_____**    **ADDITIONAL FINANCIAL TERMS:**
57 ☐ Additional financial terms are specified under the heading "OTHER TERMS AND/OR CONDITIONS" (Section 4).
58 ☐ Additional financial terms are contained in a FINANCING ADDENDUM of same date, attached hereto, signed by both parties.
59
60     **(E). $ 300,000.00**    **APPROXIMATE FUNDS DUE FROM BUYERS AT CLOSING** *(Not including closing costs):* **Cash at**
61 **closing to be paid by BUYER at closing in GOOD FUNDS, includes: cash, electronic transfer funds, certified check or cashier's check.**
62 **4. OTHER TERMS AND/OR CONDITIONS:** This Agreement is made subject to the following special terms, considerations and/or contingencies which
63 must be satisfied prior to closing
64     1) If offer is not approved by bankruptcy judge/trustee earnest money is fully refundable to the buyer.
65     The End
66
67
68
69
70
71
72
73
74 **5. ITEMS INCLUDED & EXCLUDED IN THIS SALE:** All existing fixtures and fittings that are attached to the PROPERTY are **INCLUDED IN THE**
75 **PURCHASE PRICE** (unless excluded below), and shall be transferred free of liens. These include, but are not limited to, all seller-owned attached floor
76 coverings, television wall mounts, satellite dish, attached plumbing, bathroom and lighting fixtures, window screens, screen doors, storm doors, storm
77 windows, window coverings, garage door opener(s) and transmitter(s), exterior trees, plants or shrubbery, water heating apparatus and fixtures, attached
78 fireplace equipment, awnings, ventilating, cooling and heating systems, all ranges, ovens, built-in dishwashers, fuel tanks and irrigation fixtures, attached
79 equipment, that are now on or used in connection with the PROPERTY and shall be included in the sale unless otherwise provided herein. BUYER should
80 satisfy himself/herself that the condition of the included items is acceptable. The terms stated in this section shall control over any oral statements, prior written
81 communications and/or prior publications including but not limited to MLS listings and advertisements. Personal property described in a property disclosure
82 report shall not be inferred as to be included unless specifically set forth herein. It is agreed that any item included in this section is of nominal value less
83 than $100.
84
85     **(A). ADDITIONAL ITEMS SPECIFICALLY INCLUDED IN THIS SALE:**
86     Squeeze Shoot and Livestock Scale
87
88
89
90     **(B). ITEMS SPECIFICALLY EXCLUDED IN THIS SALE:** _____
91 _____
92 _____
93 _____
94
95 **6. MINERAL RIGHTS:** Any and all mineral rights appurtenant to the PROPERTY and owned by SELLER are included in and are part of the sale of this
96 PROPERTY, and are not leased or encumbered, unless otherwise agreed to by the parties in writing.
97
98 **7. WATER RIGHTS:** Any and all water rights including but not limited to water systems, wells, springs, lakes, streams, ponds, rivers, ditches, ditch rights,
99 and the like, if any, appurtenant to the PROPERTY and owned by SELLER are included in and are a part of the sale of this PROPERTY, and are not leased
100 or encumbered, unless otherwise agreed to by the parties in writing.
101
102 **8. TITLE CONVEYANCE:** Title of SELLER is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable except
103 for rights reserved in federal patents, state or railroad deeds, building or use restrictions, building and zoning regulations and ordinances of any
104 governmental unit, and rights of way and easements established or of record. Liens, encumbrances or defects to be discharged by SELLER may be paid out
105 of purchase money at date of closing. No liens, encumbrances or defects which are to be discharged or assumed by BUYER or to which title is taken
106 subject to, exist unless otherwise specified in this Agreement.
107
108 **9. TITLE INSURANCE:** There may be types of title insurance coverages available other than those listed below and parties to this agreement
109 **are advised to talk to a title company about any other coverages available that will give the BUYER additional coverage.**
110
111     **(A). PRELIMINARY TITLE COMMITMENT:** Within 6 business days (six [6] if left blank) of final acceptance of all parties, ☐SELLER or ☒BUYER shall
112 furnish to BUYER a preliminary commitment of a title insurance policy showing the condition of the title to said PROPERTY. BUYER shall have 2
113 business days (two [2] if left blank) after receipt of the preliminary commitment, within which to object in writing to the condition of the title as set forth in
114 the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if the title
115 of said PROPERTY is not marketable, and cannot be made so within 2 business days (two [2] if left blank) after SELLER'S receipt of a written objection
116 and statement of defect from BUYER, then BUYER'S Earnest Money deposit shall be returned to BUYER and SELLER shall pay for the cost of title
117 insurance cancellation fee, escrow and legal fees, if any.
118
119     **(B). TITLE COMPANY: The parties agree that** _____ Title One _____ Title Company
120 located at   211 W 13th    Burley   ID   83318   shall provide the title policy and preliminary report of commitment.
121

BUYER'S Initials (____)(____) Date 11-17-18      SELLER'S Initials (____)(____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

Instanet

PROPERTY ADDRESS: 2095  E 600 S                        Hazelton        ID    83335    ID#:    KC11172018

**(C). STANDARD COVERAGE OWNER'S POLICY:** SELLER shall within a reasonable time after closing furnish to BUYER a title insurance policy in the amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects elsewhere set out in this Agreement to be discharged or assumed by BUYER unless otherwise provided herein. The risk assumed by the title company in the standard coverage policy is limited to matters of public record. BUYER shall receive a ILTA/ALTA Owner's Policy of Title Insurance. A title company, at BUYER's request, can provide information about the availability, desirability, coverage and cost of various title insurance coverages and endorsements. If BUYER desires title coverage other than that required by this paragraph, BUYER shall instruct Closing company in writing and pay any increase in cost unless otherwise provided herein.

**(D). EXTENDED COVERAGE LENDER'S POLICY (Mortgagee policy):** The lender may require that BUYER (Borrower) furnish an Extended Coverage Lender's Policy. This extended coverage lender's policy considers matters of public record and additionally insures against certain matters not shown in the public record. This extended coverage lender's policy is solely for the benefit of the lender and only protects the lender.

**10. INSPECTION:**

**(A). BUYER chooses** ☐**to conduct inspections** ☒**not to conduct inspections.** If BUYER chooses not to conduct inspections, skip Sections 10(B) and (C). If indicated, this contract is contingent upon BUYER'S approval of the condition of the PROPERTY and BUYER shall have the right to conduct inspections, investigations, tests, surveys and other studies at BUYER's expense. BUYER is strongly advised to exercise these rights and to make BUYER'S own selection of professionals with appropriate qualifications to conduct inspections of the entire PROPERTY. BUYER shall keep the PROPERTY free and clear of liens; indemnify and hold SELLER harmless from all liability, claims, demands, damages and costs; and repair any damages arising from the inspections. SELLER shall make the PROPERTY available for inspection and agrees to accept the responsibility and expense for making sure all the utilities are turned on no later than  NA  business days (two [2] if left blank) from acceptance for the inspection except for phone, cable and internet. No inspections may be made by any governmental building or zoning inspector or government employee without the prior consent of SELLER unless required by local law.
☐ This offer is subject to a short sale approval by a mortgage company, the timeframe(s) for completing inspections shall begin upon written approval of the short sale by the mortgage company and/or all lien holders.

**(B) TIMEFRAME(S) FOR INSPECTIONS**

**1) PRIMARY INSPECTION:**
Buyer's inspection contingency allows a BUYER to conduct a general inspection of the PROPERTY which includes all aspects of the PROPERTY, including but not limited to neighborhood, conditions, zoning and use allowances, environmental conditions, applicable school districts and/or any other aspect pertaining to the PROPERTY or related to the living environment at the PROPERTY; hereinafter referred to as the Primary Inspection. Except for additional items or conditions specifically reserved in a Secondary Inspection below BUYER shall, within    0    business days (five [5] if left blank) of acceptance, complete these inspections and give to SELLER written notice of disapproved items/conditions or written notice of termination of this Agreement based on an unsatisfactory inspection. Once BUYER delivers written notice to SELLER it shall end BUYER'S timeframe for inspections other than those specifically reserved in a Secondary Inspection below and is irrevocable regardless of if it was provided prior to the deadline stated above.

**2) SECONDARY INSPECTION:**
Items or conditions marked below, if any, allow BUYER the indicated additional time to conduct inspection of only those items or conditions. If not indicated below BUYER may still conduct these inspections but must do so under the 10(B)(1) Primary Inspection timeframe. BUYER shall, within each timeframe stated below, complete the inspections indicated and give to SELLER written notice of the disapproved item/condition or written notice of termination of this Agreement based on an unsatisfactory inspection of that item/condition. Once BUYER delivers written notice to SELLER it shall end BUYER'S timeframe for only that item/condition and is irrevocable regardless of if it was provided prior to the deadline stated below. Any notice provided under this subsection is unrelated to a notice provided under subsection 10(B)(1). BUYER shall be responsible for the cost of all indicated inspections unless otherwise noted in the *Costs Paid By* section or elsewhere herein. BUYER reserves the right to conduct the following inspections under the Primary Inspection timeline:
☐ Domestic Well Water Potability and/or Productivity Test which shall be completed and notice provided within ____ business days (ten [10] if left blank) from acceptance.
☐ Septic Inspection and required Pumping which shall be completed and notice provided within ____ business days (ten [10] if left blank) from acceptance.
☐ Survey which shall be completed and notice provided within ____ business days (ten [10] if left blank) from acceptance.
☐ Other Inspection #1: _____ which shall be completed and notice provided within ____ business days (ten [10] if left blank) from acceptance.
☐ Other Inspection #2 _____ which shall be completed and notice provided within ____ business days (ten [10] if left blank) from acceptance.

**(C). SATISFACTION/REMOVAL OF INSPECTION CONTINGENCIES:**

Each following subsection shall apply to BUYER'S Primary Inspection and, if indicated in 10(B)(2) above, shall also apply independently and repeatedly to each item or condition for which BUYER reserved additional time. If no time was reserved for any additional item(s) there will be only one notice required, if additional time was reserved in 10(B)(2) there may be multiple notices.

1). If BUYER **does not** within the strict time period specified give to SELLER written notice of disapproved items/conditions or written notice of termination of this Agreement under the Primary Inspection or any particular 10(B)(2) reserved item, BUYER shall, for only that particular inspection or item/condition, conclusively be deemed to have: (a) completed applicable inspections, investigations, review of applicable documents and disclosures; (b) assumed all liability, responsibility and expense for repairs or corrections for that particular inspection or item/condition and (c) waived BUYER'S right to terminate based upon that particular item/condition. BUYER not providing one written notice shall not affect BUYER'S rights regarding other unrelated notices and inspections.

2). If BUYER does within the strict time period specified give to SELLER written notice of termination of this Agreement based on any unsatisfactory inspection, the parties will have no obligation to continue with the transaction and the Earnest Money shall be returned to BUYER.

BUYER'S Initials /s/ ( )( /s/ ) Date  11-17-18           SELLER'S Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

Instanet:

JULY 2018 EDITION                RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                Page 4 of 8

PROPERTY ADDRESS: 2095  E 600 S                    Hazelton        ID    83335    ID#:    KC11172018

193
194    3). If BUYER does within the strict time period specified give to SELLER written notice of disapproved items/conditions, it shall end BUYER'S
195    timeframe for that particular inspection and is irrevocable. BUYER shall provide to SELLER pertinent section(s) of written inspection reports upon
196    request, if applicable. Upon receipt of written notice SELLER shall have ___NA___ business days (three [3] if left blank) in which to respond in writing.
197    SELLER, at SELLER'S option, may agree to correct the items as requested by BUYER in the notice or may elect not to do so. If SELLER agrees in
198    writing to correct the item/condition requested by BUYER, then said agreement will become a integral part of this contract. Otherwise, immediately upon
199    a written response from SELLER that rejects BUYER'S requests, in whole or in part, said response is irrevocable and BUYER may proceed under
200    10(C)(4) below.
201
202    4).  If SELLER does not agree to correct BUYER'S disapproved items/conditions within the strict time period specified, or SELLER does not respond in
203    writing within the strict time period specified, then the BUYER has the option of either proceeding with the transaction without the SELLER being
204    responsible for correcting the deficiencies stated in that particular notice, or giving the SELLER written notice within ___NA___ business days (three [3] if left
205    blank) that BUYER will not continue with the transaction and will receive the Earnest Money back. If BUYER does not give written notice of cancellation
206    within the strict time period specified, BUYER shall conclusively be deemed to  have elected to proceed with the transaction without the repairs or
207    corrections stated in that particular notice. BUYER electing to proceed with the transaction under BUYER'S Primary Inspection or any single inspection
208    reserved under 10(B)(2) shall not affect BUYER'S rights regarding other inspections reserved in 10(B)(2).
209
210    (D). Home Warranty Programs are available for purchase through a number of Home Warranty Companies.
211
212    **11. LEAD PAINT DISCLOSURE:** The subject PROPERTY ☐is ☒is not defined as "Target Housing" regarding lead-based paint or lead-based paint
213    hazards.  The term lead-based paint hazards are intended to identify lead-based paint and all residual lead-containing dusts and soils regardless of the
214    source of the lead. If yes, BUYER hereby acknowledges the following:  (a) BUYER has been provided an EPA approved lead-based paint hazard
215    information pamphlet, "Protect Your Family From Lead in Your Home",  (b) receipt of SELLER'S Disclosure of Information and Acknowledgment Form and
216    have been provided with all records, test reports or other information, if any, related to the presence of lead-based paint hazards on said PROPERTY,
217    (c) that this contract is contingent upon BUYERS right to have the PROPERTY tested for lead-based paint hazards to be completed no later than
218    _____Waives_____ or the contingency will terminate, (d) that BUYER hereby ☒waives ☐does not waive  this right, (e) that if test results show
219    unacceptable amounts of lead-based paint on the PROPERTY, BUYER has the right to cancel the contract subject to the option of the SELLER (to be given
220    in writing) to elect to remove the lead-based paint and correct the problem which must be accomplished before closing, (f) that if the contract is canceled
221    under this clause, BUYER'S earnest money deposit shall be returned to BUYER. Additionally, if any structure was built before 1978 and is a residential
222    home, apartment or child-occupied facility such as a school or day-care center, federal law requires contractors that disturb lead-based paint in that structure
223    to provide the owner with a "Renovate Right" pamphlet. The contractor shall be certified and follow specific work practices to prevent lead contamination.
224
225    **12. MOLD DISCLAIMER:** BUYER is hereby advised that mold and/or other microorganisms may exist at the Property. Upon closing BUYER
226    acknowledges and agrees to accept full responsibility and risk for any matters that may result from mold and/ or other microorganisms and to
227    hold SELLER and any Broker or agent representing SELLER or BUYER harmless from any liability or damages (financial or otherwise) relating to
228    such matters.
229
230    **13. SQUARE FOOTAGE VERIFICATION:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY
231    OR IMPROVEMENTS IS APPROXIMATE. IF SQUARE FOOTAGE IS MATERIAL TO THE BUYER, IT MUST BE VERIFIED DURING THE INSPECTION
232    PERIOD.
233
234    **14. SELLER'S PROPERTY CONDITION DISCLOSURE FORM:** If required by Title 55, Chapter 25 Idaho Code SELLER shall within ten (10)
235    calendar days after execution of this Agreement provide to BUYER or BUYER'S agent, "Seller's Property Condition Disclosure Form" or other acceptable
236    form. BUYER has received the "Seller's Property Condition Disclosure Form" or other acceptable form prior to signing this Agreement: ☐Yes ☐No ☒N/A
237
238    **15. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** As part of the BUYER'S inspection of the PROPERTY as set forth in Section 10,
239    BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have ___NA___ business days (five
240    [5] if left blank) but in no event shall such time period exceed that time period set forth for inspections in Section 10, to review any CC&Rs that may affect the
241    PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with particularity describing BUYER'S
242    reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any objection to the terms of any
243    CC&Rs affecting the PROPERTY, nothing contained herein shall constitute a waiver of BUYER to challenge CC&Rs directly with a homeowner's association
244    after closing.  If BUYER timely and reasonably objects to a term of the CC&Rs, this Agreement shall terminate, and the Earnest Money shall be returned to
245    BUYER.
246
247    **16. SUBDIVISION HOMEOWNER'S ASSOCIATION:** BUYER is aware that membership in a Home Owner's Association may be required and
248    BUYER agrees to abide by the Articles of Incorporation, Bylaws and rules and regulations of the Association. BUYER is further aware that the PROPERTY
249    may be subject to assessments levied by the Association described in full in the Declaration of Covenants, Conditions and Restrictions. BUYER has
250    reviewed Homeowner's Association Documents: ☐Yes ☐No ☒N/A. Association fees/dues are $_____ per_____.
251    ☐BUYER ☐SELLER ☐Shared Equally ☒N/A to pay Association SET UP FEE of $_____ and/or
252    ☐BUYER ☐SELLER ☐Shared Equally ☒N/A to pay Association PROPERTY TRANSFER FEES of $_____ and/or
253    ☐BUYER ☐SELLER ☐Shared Equally ☒N/A to pay Association STATEMENT OF ACCOUNT FEE of $_____ at closing.  Association Fees are
254    governed by Idaho Code 55-116 and 55-1507.
255
256    **17. COSTS PAID BY:** The parties agree to pay the following costs as indicated below. None of the costs to be paid by the parties in this section creates
257    an inspection or performance obligation other than strictly for the payment of costs unless otherwise stated. There may be other costs incurred in addition to
258    those set forth below. Such costs may be required by the lender, by law, or by other circumstances. Requested tests/inspection reports as indicated below
259    shall be provided to the other party within the time period specified in Section 10.
260    SELLER agrees to pay up to $_____NA_____ ($0 if left blank) of lender required repair costs only.
261    BUYER or SELLER has the option to pay any lender required repair costs in excess of this amount.

BUYER'S Initials (_____)(_____) Date _11-17-18_          SELLER'S Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.
JULY 2018 EDITION                RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                Page 4 of 8

Instanet

JULY 2018 EDITION     RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT     Page 5 of 8

PROPERTY ADDRESS: 2095  E 600 S     Hazelton    ID   83335   ID#:   KCI1172018

262
263 Upon closing SELLER agrees to pay ☐___NA___% of the purchase price OR ☐$_____NA_____ (dollar amount) (N/A if left
264 blank) as a SELLER concession. This can be used toward lender-approved BUYER'S closing costs, lender fees, and prepaid
265 costs which include but are not limited to those items in BUYER columns marked below. This concession can also be used for
266 any other expense not related to financing at the BUYER's discretion.

| | BUYER | SELLER | Shared Equally | N/A | | BUYER | SELLER | Shared Equally | N/A |
|---|---|---|---|---|---|---|---|---|---|
| Appraisal Fee | | | | ✗ | Title Ins. Standard Coverage Owner's Policy | | ✗ | | |
| Appraisal Re-Inspection Fee | | | | ✗ | Title Ins. Extended Coverage Lender's Policy – Mortgagee Policy | | | | ✗ |
| Closing Escrow Fee | | | ✗ | | Additional Title Coverage | | | | ✗ |
| Lender Document/Processing Fee | | | | ✗ | Domestic Well Water Potability Test Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ |
| Tax Service Fee | | | | ✗ | Domestic Well Water Productivity Test Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ |
| Flood Certification/Tracking Fee | | | | ✗ | Septic Inspections Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ |
| Lender Required Inspections | | | | ✗ | Septic Pumping Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ |
| Attorney Contract Preparation or Review Fee | | | | ✗ | Survey Shall be ordered by: ☐BUYER ☐SELLER | | | | ✗ |
| | | | | | | | | | |
| | | | | | | | | | |

267
268 **18. OCCUPANCY:** BUYER ☐does ☒does not intend to occupy PROPERTY as BUYER'S primary residence.
269
270 **19. RISK OF LOSS OR NEGLECT:** Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be
271 materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of the BUYER.
272
273 **20. WALK THROUGHS:** The SELLER grants BUYER and any representative of BUYER reasonable access to conduct two walk through inspections of
274 the PROPERTY NOT AS A CONTINGENCY OF THE SALE, but for the following stated purposes: first walkthrough shall be within __NA__ business days
275 (three [3] if left blank) after the deadline for completion of repairs agreed to as a result of the Buyer's Inspection Contingency for the purpose of satisfying
276 BUYER that any repairs agreed to in writing by BUYER and SELLER have been completed. The second walkthrough shall be within __NA__ business days
277 (three [3] if left blank) prior to close of escrow, for the purpose of satisfying BUYER that PROPERTY is in substantially the same condition as on the date this
278 offer is made. The walk throughs stated herein are not a contingency of the sale which might allow termination, but rather for BUYER'S satisfaction.
279 BUYER'S only recourse if unsatisfied is to notify SELLER who must correct or rectify the situation. SELLER shall make PROPERTY available for the walk
280 throughs and agrees to accept the responsibility and expense for making sure all the utilities are turned on for the walk throughs except for phone, cable and
281 internet. If BUYER does not conduct either of the walk throughs, BUYER specifically releases the SELLER and Broker(s) and their associates of any liability
282 as to incomplete repairs and/or any changed conditions.
283
284 **21. SINGULAR AND PLURAL** terms each include the other, when appropriate.
285
286 **22. FORECLOSURE NOTICE:** If the PROPERTY described above is currently involved in a foreclosure proceeding (pursuant to Idaho Code §45-1506)
287 any contract or agreement with the owner or owners of record that involves the transfer of any interest in residential real property, as defined in §45-
288 525(5)(b), Idaho Code, subject to foreclosure must be in writing and must be accompanied by and affixed to RE-42 Property Foreclosure Disclosure Form.
289 **23. MECHANIC'S LIENS - GENERAL CONTRACTOR DISCLOSURE STATEMENT NOTICE:** BUYER and SELLER are hereby notified that,
290 subject to Idaho Code §45-525 et seq., a "General Contractor" must provide a Disclosure Statement to a homeowner that describes certain rights afforded to
291 the homeowner (e.g. lien waivers, general liability insurance, extended policies of title insurance, surety bonds, and sub-contractor information). The
292 Disclosure Statement must be given to a homeowner prior to the General Contractor entering into any contract in an amount exceeding $2,000 with a
293 homeowner for construction, alteration, repair, or other improvements to real property, or with a residential real property purchaser for the purchase and sale
294 of newly constructed property. Such disclosure is the responsibility of the General Contractor and it is not the duty of your agent to obtain this information on
295 your behalf. You are advised to consult with any General Contractor subject to Idaho Code §45-525 et seq. regarding the General Contractor Disclosure
296 Statement.
297
298 **24. SALES PRICE INFORMATION:** Pursuant to Idaho Code §54-2083(6)(d), a "sold" price of real property is not confidential client information.
299
300 **25. TRANSMISSION OF DOCUMENTS:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed
301 facsimile or electronic transmission shall be the same as delivery of an original. At the request of either the BUYER or SELLER, or the LENDER, or the
302 Closing company, the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.

BUYER'S Initials 𝒮 𝒜. ᷞ ᷞ ) Date 11-17-8     SELLER'S Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: 2095  E 600 S _____ Hazelton ____ ID __ 83335 __ ID#: __ KCI1172018 __

**26. WIRE TRANSFER WARNING:** Electronic means of transferring money (i.e. ETF, wire transfer, electronic check, direct deposit, etc...) are subject to sophisticated cyber fraud attacks. These attacks are even more prevalent in real estate transactions due to the large sums of money being exchanged. BUYER is advised that Brokerage will not provide electronic transfer instructions by e-mail. Following money transfer instructions contained in an email from any party is inherently dangerous and should be avoided. BUYER agree that if BUYER use, or authorize the use of, electronic transfer of funds in a transaction they hereby hold the Brokerages, their agents, and the designated title and escrow company harmless from any and all claims arising out of inaccurate transfer instructions, fraudulent interception of said funds and/or any other damage relating to the conduct of third parties influencing the transfer process or stealing funds.

**27. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject real PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized by the state of Idaho as found in Idaho Code §73-106. If the time in which any act required under this agreement is to be performed is based upon a business day calculation, then it shall be computed by excluding the calendar day of execution and including the last business day. The first business day shall be the first business day after the date of execution. If the last day is a legal holiday, then the time for performance shall be the next subsequent business day.

**28. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, midnight to midnight, in the local time zone where the subject real PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."

**29. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

**30. DEFAULT:** **If BUYER defaults** in the performance of this Agreement, SELLER has the option of: (1) accepting the Earnest Money as liquidated damages or (2) pursuing any other lawful right and/or remedy to which SELLER may be entitled. If SELLER elects to proceed under (1), SELLER shall make demand upon the holder of the Earnest Money, upon which demand said holder shall pay from the Earnest Money the costs incurred by SELLER'S Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of title insurance, escrow fees, appraisal, credit report fees, inspection fees and attorney's fees; and said holder shall pay any balance of the Earnest Money, one-half to SELLER and one-half to SELLER'S Broker, provided that the amount to be paid to SELLER'S Broker shall not exceed the Broker's agreed-to commission. SELLER and BUYER specifically acknowledge and agree that if SELLER elects to accept the Earnest Money as liquidated damages, such shall be SELLER'S sole and exclusive remedy, and such shall not be considered a penalty or forfeiture. However, in the event the parties mutually agree in writing that the Earnest Money shall become non-refundable, said agreement shall not be considered an election of remedies by SELLER and the non-refundable Earnest Money shall not constitute liquidated damages; nor shall it act as a waiver of other remedies, all of which shall be available to SELLER; it may however be used to offset SELLER'S damages. If SELLER elects to proceed under (2), the holder of the Earnest Money shall be entitled to pay the costs incurred by SELLER'S Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of brokerage fee, title insurance, escrow fees, appraisal, credit report fees, inspection fees and attorney's fees, with any balance of the Earnest Money to be held pending resolution of the matter. **If SELLER defaults**, having approved said sale and fails to consummate the same as herein agreed, BUYER'S Earnest Money deposit shall be returned to him/her and SELLER shall pay for the costs of title insurance, escrow fees, appraisals, credit report fees, inspection fees, brokerage fees and attorney's fees, if any. This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled.

**31. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination or breach of this Agreement, BUYER and SELLER agree that in the event of any controversy regarding the Earnest Money and things of value held by Broker or closing company, Broker may reasonably rely on the terms of this Agreement or other written documents signed by both parties to determine how to disburse the disputed money. However, Broker or closing company shall not be required to take any action but may await any proceeding, or at Broker's or closing company's option and sole discretion, may interplead all parties and deposit any moneys or things of value into a court of competent jurisdiction and shall recover all costs which were incurred as a result of the dispute including, but not limited to, reasonable attorney's fees. If either parties' Broker incurs attorney's fees as a result of any Earnest Money dispute, whether or not formal legal action is taken, said Broker is entitled to recover actual fees incurred from either BUYER or SELLER.

**32. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies shall together constitute one and the same instrument.

**33. "NOT APPLICABLE" DEFINED:** The letters "n/a," "N/A," "n.a.," and "N.A." as used herein are abbreviations of the term "not applicable." Where this agreement uses the term "not applicable" or an abbreviation thereof, it shall be evidence that the parties have contemplated certain facts or conditions and have determined that such facts or conditions do not apply to the agreement or transaction herein.

**34. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

BUYER'S Initials ____ ) ( ____ ) Date  11-17-18          SELLER'S Initials ( ____ ) ( ____ ) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

Instanet

PROPERTY ADDRESS: 2095  E 600 S                          Hazelton            ID    83335    ID#:    KC11172018

370  **35. REPRESENTATION CONFIRMATION:** Check one (1) box In Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the
371  brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).
372
373      Section 1:
374      ☒ A.  The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).
375      ☐ B.  The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.
376      ☐ C.  The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT
377          acting solely on behalf of the BUYER(S).
378      ☐ D.  The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).
379
380      Section 2:
381      ☐ A.  The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).
382      ☐ B.  The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.
383      ☐ C.  The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT
384          acting solely on behalf of the SELLER(S).
385      ☒ D.  The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).
386
387  Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho
388  real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy
389  was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A
390  BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.
391
392  **36. CLOSING:** On or before the closing date, BUYER and SELLER shall deposit with the closing company all funds and instruments necessary to
393  complete this transaction. Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale
394  proceeds are available to SELLER. The closing shall be no later than (Date)_____12/17/2018_____.
395
396  The parties agree that the CLOSING COMPANY for this transaction shall be _____ Title One _____
397
398  located at 211 W 13th St                                    Burley            ID    83318    .
399
400  If a long-term escrow / collection is involved, then the long-term escrow holder shall be _____
401                                                                                                                      .
402
403  **37. POSSESSION:** BUYER shall be entitled to possession ☒upon closing or ☐date_____ time _____ ☐A.M. ☐P.M.
404
405  **38. PRORATIONS:** Property taxes and water assessments (using the last available assessment as a basis), rents collected, interest and reserves, liens,
406  encumbrances or obligations assumed, and utilities shall be prorated ☒upon closing or as of ☐date_____
407  BUYER to reimburse SELLER for fuel in tank ☐ Yes ☐ No ☐ N/A. Dollar amount may be determined by SELLER's supplier.
408
409  **39. ASSIGNMENT:** This Agreement and any rights or interests created herein ☒ may ☐ may not be sold, transferred, or otherwise assigned.
410
411  **40. ENTIRE AGREEMENT:** This Agreement including any addendums or exhibits, constitutes the entire Agreement between the parties respecting the
412  matters set forth and supersedes all prior Agreements between the parties respecting such matters. This Agreement may be modified only by a written
413  agreement signed by each of the parties.
414
416  **41. TIME IS OF THE ESSENCE IN THIS AGREEMENT.**
416
417  **42. AUTHORITY OF SIGNATORY:**  If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this
418  agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.
419
420  **43. ACCEPTANCE:** This offer may be revoked at any time prior to acceptance and is made subject to acceptance on or before
421  (Date)_____11/20/18_____ at (Local Time in which PROPERTY is located)_____5:00_____ ☐A.M. ☒P.M.

BUYER'S Initials _____ Date _11-17-18_            SELLER'S Initials (_____)(_____) Date _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

Instanet

JULY 2018 EDITION        RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT        Page 8 of 8

PROPERTY ADDRESS: 2095  E 600 S        Hazelton    ID   83335   ID#:  KC11172018

**44. BUYER'S SIGNATURES:**

☐SEE ATTACHED BUYER'S ADDENDUM(S): _____ (Specify number of BUYER addendum(s) attached.)
☐SEE ATTACHED BUYER'S EXHIBIT(S): _____ (Specify number of BUYER exhibit(s) attached.)

☐ BUYER does currently hold an active Idaho real estate license. ☒ BUYER is related to agent.

BUYER Signature _Gary Carney_      BUYER (Print Name) _GARY CARNEY_

Date _____ Time _____ ☐A.M. ☐P.M.    Phone # _____ Cell # _____

Address _____    E-Mail _____

City _____ State _____ Zip _____    Fax # _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ BUYER does currently hold an active Idaho real estate license. ☐ BUYER is related to agent.

BUYER Signature _Barbara Carney_      BUYER (Print Name) _BARBARA Carney_

Date _____ Time _____ ☐A.M. ☐P.M.    Phone # _____ Cell # _____

Address _____    E-Mail _____

City _____ State _____ Zip _____    Fax # _____

**45. SELLER'S SIGNATURES:** On this date, I/We hereby approve and accept the transaction set forth in the above Agreement and agree to carry out all the terms thereof on the part of the SELLER.

☐SIGNATURE(S) SUBJECT TO ATTACHED COUNTER OFFER
☐SIGNATURE(S) SUBJECT TO ATTACHED ADDENDUM(S) # _____
☐SIGNATURE(S) SUBJECT TO ATTACHED EXHIBIT(S) # _____

☐ SELLER does currently hold an active Idaho real estate license.    ☐ SELLER is related to agent.

SELLER Signature _____    SELLER (Print Name) Rainsdon Trustee

Date _____ Time _____ ☐A.M. ☐P.M.    Phone # _____ Cell # _____

Address _____    E-Mail _____

City _____ State _____ Zip _____    Fax # _____

CONTRACTOR REGISTRATION # (if applicable) _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☐ SELLER does currently hold an active Idaho real estate license.    ☐ SELLER is related to agent.

SELLER Signature _____    SELLER (Print Name) _____

Date _____ Time _____ ☐A.M. ☐P.M.    Phone # _____ Cell # _____

Address _____    E-Mail _____

City _____ State _____ Zip _____    Fax # _____

CONTRACTOR REGISTRATION # (if applicable) _____

**LATE ACCEPTANCE**

If acceptance of this offer is received after the time specified, it shall not be binding on the BUYER unless BUYER approves of said acceptance within _____ calendar days (three [3] if left blank) by BUYER initialing HERE (_____)(_____) Date _____
If BUYER timely approves of SELLER's late acceptance, an initialed copy of this page shall be immediately delivered to SELLER.

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

JULY 2018 EDITION        RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT        Page 8 of 8

Instanet

## RE-13 COUNTER OFFER # _____1_____ (1,2,3 etc.)

**THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS**

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.



Today's Date: _____ 11/19/2018 _____

This is a COUNTER OFFER to the Purchase and Sale Agreement Dated: _____ 11/17/2018

ADDRESS: 2095 E 600 S                Jerome      ID 83335 ID#: _____ KC11172018

BUYER: _____ Gary Carney _____

SELLER: _____ Gary L Rainsdon for the Bankruptcy _____            Estate of Well Wyatt

The parties accept all of the terms and conditions in the above-designated Purchase and Sale Agreement with the following changes:
☒This is a SELLER counter offer. The SELLER reserves the right to withdraw this offer or accept any other offers prior to the receipt of a true copy of signed acceptance of this Counter Offer within the time frame specified herein.
☐This is a BUYER counter offer. The undersigned BUYER reserves the right to withdraw this offer at any time prior to the receipt of a true copy of signed acceptance of this Counter Offer within the time frame specified herein.

**1. Purchase Price to be $625,000.**

**2. Closing Company to be TitleFact.**

**3. Page 7 Section 2 should be checked A(line 381) not D(line385). Brokerage working with the Seller is acting as an Agent for the Seller.**

**4. All offers are subject to higher and/or better offers.**

5 Page 2, item 5.(A): Squeeze Shoot and Livestock Scale are included to the extent they are affixed to the real estate. ✗

To the extent the terms of this Counter Offer modify or conflict with any provisions of the Purchase and Sale Agreement including all prior Addendums, the terms in this Counter Offer shall control. All other terms of the Purchase and Sale Agreement including all prior Addendums not modified by this Counter Offer shall remain the same. Buyer and Seller acknowledge the down payment and/or loan amount on Page 1 of Purchase & Sale Agreement may change if purchase price is changed as part of this Counter Offer. If original offer has expired, has been revoked and/or acceptance is late, then mutual execution of this Agreement shall constitute consent to revive and retender the original offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Agreement.

If a signed acceptance is not delivered on or before (date): _____ 11/22/2018 _____ at _____ 5:00 _____ ☐A.M. ☒P.M. this Counter Offer shall be deemed to have expired.

DELIVERY: Delivery shall be to the agent/broker working with the maker of the Counter Offer in person, by mail, facsimile or electronic transmission of any signed original document, and retransmission of any signed original document. Retransmission of any signed facsimile or electronic transmission shall be deemed to be the same as delivery of an original.

SELLER _Gary Rainsd, Trustee_ Date _11-20-18_ Time _6:00_ ☒A.M. ☐P.M.

SELLER _____ Date _____ Time _____ ☐A.M. ☐P.M.

BUYER _____ Date _____ Time _____ ☐A.M. ☐P.M.

BUYER _____ Date _____ Time _____ ☐A.M. ☐P.M.

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

Authentisign ID: 0EFE331F-E48A-48AD-B548-A1F29349BF08

**RE-13 COUNTER OFFER #_____2_____** (1,2,3 etc.)

JULY 2018 EDITION
Page 1 of 1

**IDAHO REALTORS®**

**THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS**

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

1  Today's Date: _____**11/20/2018**_____

3  This is a COUNTER OFFER to the Purchase and Sale Agreement Dated:_____**11/17/2018**

5  ADDRESS:**2095 E 600 S**                    **Hazelton**    **ID  83335** ID#:_____**KC11172018**

7  BUYER:_____**Gary Carney**_____    &    _____**Barbara Carney**

9  SELLER:_____**Rainsdon Trustee**

11 The parties accept all of the terms and conditions in the above-designated Purchase and Sale Agreement with the following changes:
12 ☐**This is a SELLER counter offer.** The SELLER reserves the right to withdraw this offer or accept any other offers prior to the receipt of a
13 true copy of signed acceptance of this Counter Offer within the time frame specified herein.
14 ☒**This is a BUYER counter offer.** The undersigned BUYER reserves the right to withdraw this offer at any time prior to the receipt of a
15 true copy of signed acceptance of this Counter Offer within the time frame specified herein.

16 **1. Purchase price to be $600,000.**
18 **2. Title Company to be Title One (Annette Roth) in Burley, ID.**
19 **3. Brokerage working with Seller is acting as an Agent.**
20 **4. All offers are subect to higher and/or better offers.**
22 **5. Squeeze shoot and livestock scale are included to the extent that they are affixed to the real**
23 **estate.**
24 **6. Seller agrees to close property once the appeal period has ended, and the title company**
25 **guarantees Buyers' clear title, on or before January 21, 2019.**

40 To the extent the terms of this Counter Offer modify or conflict with any provisions of the Purchase and Sale Agreement including all prior
41 Addendums, the terms in this Counter Offer shall control. **All other terms of the Purchase and Sale Agreement including all prior**
42 **Addendums not modified by this Counter Offer shall remain the same.** Buyer and Seller acknowledge the down payment and/or loan
43 amount on Page 1 of Purchase & Sale Agreement may change if purchase price is changed as part of this Counter Offer. If original offer
44 has expired, has been revoked and/or acceptance is late, then mutual execution of this Agreement shall constitute consent to revive and
45 retender the original offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Agreement.

47 If a signed acceptance is not delivered on or before (date): _____**11/21/2018**_____ at _____**5:00**_____ ☐A.M. ☒P.M.
48 this Counter Offer shall be deemed to have expired.

50 DELIVERY: Delivery shall be to the agent/broker working with the maker of the Counter Offer in person, by mail, facsimile or electronic
51 transmission of any signed original document, and retransmission of any signed original document. Retransmission of any signed facsimile
52 or electronic transmission shall be deemed to be the same as delivery of an original.

54 SELLER X _____ Date _**11-21-18**_ Time _**10:55**_ ☒A.M. ☐P.M.
55    Rainsdon Trustee

56 SELLER _____ Date _____ Time_____ ☐A.M. ☐P.M.

58 BUYER | *Gary C Carney* | Date **11/20/2018** Time **5:53 PM** ☐A.M. ☐P.M.
59    Gary Carney

60 BUYER | *Barbara Carney* | Date **11/20/2018** Time **5:56 PM** ☐A.M. ☐P.M.
   Barbara Carney

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

InstanetFORMS

# EXHIBIT "B"

## AGREEMENT TO SELL REAL PROPERTY
## AND DISTRIBUTE SALES PROCEEDS

**THIS AGREEMENT TO SALE REAL PROPERTY AND DISTRIBUTE SALES PROCEEDS** (this "Agreement") is made and entered into as of the _____ day of _____, 2018, by and between Gary L. Rainsdon, duly appointed Chapter 7 Trustee (the "Chapter 7 Trustee") for Debtor, Wells Alan Wyatt, Case No. 17-40973-JMM; Kathleen A. McAllister, the duly appointed Chapter 13 Trustee (the "Chapter 13 Trustee") for Candice E. Cooley, Case No. 18-40515-JMM; and Banner Bank (the "Bank") (collectively the "Parties").

## RECITALS

A.      WHEREAS, on November 3, 2017, Wells Alan Wyatt ("Wyatt") filed for relief under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Filing Date");

B.      WHEREAS, on the Chapter 7 Filing Date Wyatt was the co-owner of approximately 80 acres of real property with a common address of 2095 East 600 South and 2085 East 600 South, Hazleton, Jerome County, Idaho (the "Feedlot"). A description of the Feedlot is more particularly described in Exhibit "A" attached hereto and incorporated herein by reference;

C.      WHEREAS, Candice E. Cooley was also a co-owner of the Feedlot;

D.      WHEREAS, On June 15, 2018, Cooley filed for relief under Chapter 13 of the Bankruptcy Code (the "Chapter 13 Filing Date");

E.      WHEREAS, the Feedlot is encumbered by liens in favor of First Federal Bank in the approximate amount of $143,000.00, Timmerman & Sons Feeding, Co. in the sum of approximately $110,000.00, and Banner Bank in the sum of approximately $500,000.00; for a total as of the Chapter 13 Filing Date of $752,897.22;

F.      WHEREAS, Banner Bank has requested the Chapter 7 Trustee and Chapter 13 Trustee sell the Feedlot free and clear of liens and other interest, under 11 U.S.C. § 363(b), (f) and (h);

G.      WHEREAS, First Federal Bank and Timmerman & Sons Feeding Co. do not object to a sell of the Feedlot free and clear of liens and other interests; and

H.      WHEREAS, the parties desire to enter into this Agreement to provide for the terms of the sale of the Feedlot and the distribution of proceeds received from the sale.

## AGREEMENT

NOW, THEREFORE, in consideration of the agreements, representations, warranties, covenants and provisions contained herein, and subject to the approval of the United States Bankruptcy Court for the District of Idaho, the Chapter 7 Trustee, the Chapter 13 Trustee and Banner Bank agree as follows:

1.      **Appointment of Realtor.** The Chapter 7 Trustee and Chapter 13 Trustee will file applications in their respective bankruptcy cases to appoint Canyonside Realty as Realtor to list and sell the Feedlot;

2.    <u>Distribution of Sale Proceeds</u>.  Sale proceeds will be distributed as follows:

    a.    All costs of sale, including real estate commissions;

    b.    The net sum of $37,500.00 to the Chapter 7 Trustee;

    c.    The sum of $25,000.00 to the Chapter 13 Trustee;

    d.    Attorneys' fees and costs incurred by the Chapter 7 Trustee, incurred with the sale of the Feedlot;

    e.    All real property taxes and any capital gains taxes that may be due and owing upon the sale of the Feedlot;

    f.    To the lienholders in the order of their priority;

    g.    The parties agree to the amounts and distributions described in this Paragraph 2, regardless of the proceeds received from the sale of the Feedlot.

3.    <u>119 Park Street Property</u>.  The Chapter 13 Trustee agrees that the property located at 119 Park Street, Hazelton, Jerome County, Idaho, more particularly described in Exhibit "B" attached hereto and incorporated herein by reference, is property of the Chapter 7 Bankruptcy Estate, and the Chapter 13 estate hereby waives and disclaims any interest in this property and all proceeds therefrom.

4.    <u>Sale of Property</u>.  Chapter 7 Trustee, in his sole discretion, may accept or reject any offer made for the purchase of the Feedlot.  If the Feedlot is not sold on or before February 15, 2019, the Parties stipulate that the automatic stay in favor of First Federal Bank be terminated to permit First Federal Bank to exercise its state court remedies.

5.    <u>Court Approval</u>.  Upon receipt of an acceptable purchase offer, the Chapter 7 Trustee and the Chapter 13 Trustee will take such action and file such pleadings in their respective bankruptcy cases to obtain Court approval for the sale consistent with the terms of this Agreement.

6.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and shall inure the benefit of the parties hereto and their successors, heirs and assigns.

7.    <u>Entire Agreement</u>.  This Agreement contains the entire Agreement between the parties hereto, with respect to the subject matter of this Agreement, and supersedes all prior understandings, agreements, representations, warranties, if any, with respect to said subject matter.

8.    <u>Amendment</u>.  This Agreement shall only be amended and modified by a writing executed by each of the parties hereto.

9.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute but one and the same Agreement.

10.    <u>Additional Documents</u>.  The parties agree to execute such additional documents as may be necessary to effectuate the terms of this Agreement.

11.    <u>Sale Free and Clear of Interest</u>.  By executing this Agreement, the parties consent that the Feedlot may be sold free and clear of interest, pursuant to 11 U.S.C. 363(h), and that an adversary proceeding is not required.

12.   _Mutual Release_.  In exchange for the promises contained herein, and except for the Parties obligations under this Agreement, the Parties do hereby mutually release, remise and forever discharge each other, their respective officers, partners, employees, agents, and each of them, of and from any and all claims, demands, rights or causes of action whatsoever kind or nature which any of the Parties hereto has ever had or may now have or may hereafter have, whether known or unknown, foreseen or unforeseen, from the beginning of time until the execution of this Agreement relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties hereby execute this Agreement.

_____     Dated August _____, 2018.
GARY L. RAINSDON
Chapter 7 Trustee


_____     Dated August _____, 2018.
KATHLEEN A. MCCALLISTER
Chapter 13 Trustee


BANNER BANK:


By: _Randall A. Peterman_     Dated August _19_, 2018.
Its: _Attorney_


_____     Dated August _____, 2018.
WELLS ALAN WYATT


_____     Dated August _____, 2018.
CANDICE E. COOLEY


FIRST FEDERAL BANK:


By:_____     Dated August _____, 2018.
DAVID COLEMAN
Its:  Attorney

12. <u>Mutual Release</u>. In exchange for the promises contained herein, and except for the Parties obligations under this Agreement, the Parties do hereby mutually release, remise and forever discharge each other, their respective officers, partners, employees, agents, and each of them, of and from any and all claims, demands, rights or causes of action whatsoever kind or nature which any of the Parties hereto has ever had or may now have or may hereafter have, whether known or unknown, foreseen or unforeseen, from the beginning of time until the execution of this Agreement relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties hereby execute this Agreement.


_____    Dated August _____, 2018.
GARY L. RAINSDON
Chapter 7 Trustee


_____    Dated August 29, 2018.
KATHLEEN A. MCCALLISTER
Chapter 13 Trustee


BANNER BANK:


By:_____    Dated August _____, 2018.
Its:_____


_____    Dated August _____, 2018.
CANDICE E. COOLEY


FIRST FEDERAL BANK:


By:_____    Dated August _____, 2018.
DAVID COLEMAN
Its: Attorney

12.  <u>Mutual Release</u>.  In exchange for the promises contained herein, and except for the Parties obligations under this Agreement, the Parties do hereby mutually release, remise and forever discharge each other, their respective officers, partners, employees, agents, and each of them, of and from any and all claims, demands, rights or causes of action whatsoever kind or nature which any of the Parties hereto has ever had or may now have or may hereafter have, whether known or unknown, foreseen or unforeseen, from the beginning of time until the execution of this Agreement relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties hereby execute this Agreement.


_____     Dated August _____, 2018.
GARY L. RAINSDON
Chapter 7 Trustee


_____     Dated August _____, 2018.
KATHLEEN A. MCCALLISTER
Chapter 13 Trustee


BANNER BANK:


By:_____     Dated August _____, 2018.
Its:_____


_____     Dated August __31__, 2018.
CANDICE E. COOLEY

FIRST FEDERAL BANK:


By:_____     Dated August _____, 2018.
DAVID COLEMAN
Its:  Attorney

12. <u>Mutual Release</u>. In exchange for the promises contained herein, and except for the Parties obligations under this Agreement, the Parties do hereby mutually release, remise and forever discharge each other, their respective officers, partners, employees, agents, and each of them, of and from any and all claims, demands, rights or causes of action whatsoever kind or nature which any of the Parties hereto has ever had or may now have or may hereafter have, whether known or unknown, foreseen or unforeseen, from the beginning of time until the execution of this Agreement relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties hereby execute this Agreement.

_____ Dated August _29_, 2018.
GARY L. RAINSDON
Chapter 7 Trustee


_____ Dated August _____, 2018.
KATHLEEN A. MCCALLISTER
Chapter 13 Trustee


BANNER BANK:

By: _____ Dated August _29_, 2018.
Its: _____


_____ Dated August _____, 2018.
WELLS ALAN WYATT


_____ Dated August _____, 2018.
CANDICE E. COOLEY


FIRST FEDERAL BANK:


By: _____ Dated August _____, 2018.
DAVID COLEMAN
Its: Attorney